```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


IRENE NAJMOLA                       :    CIVIL ACTION
                                    :
     v.                             :
                                    :
WOMEN'S HEALTHCARE GROUP            :
OF PA, ET AL.                       :    NO. 13-6519
```

MEMORANDUM

McLaughlin, J.                                            July 24, 2014

    This lawsuit arises from the termination of Irene Najmola's employment.  After informing her employer that she was being released from short-term disability leave to return to work full-time, Najmola was informed that there was no position for her.  The plaintiff alleges claims for age discrimination, violation of ERISA, violation of the FMLA, and fraudulent misrepresentation against defendants Women's Healthcare Group of Pennsylvania d/b/a Chester County OB/GYN Division, Women's Healthcare Group of Pennsylvania, LLC, Chester County OB/GYN Associates, Chester County OB/GYN Services d/b/a Chester County OB/GYN Associates ("CCOGS"), and The Chester County Hospital and Health System ("The Chester County Hospital").

    Defendants CCOGS and The Chester County Hospital (collectively the "Chester County Defendants") have moved to dismiss the plaintiff's claims against them pursuant to Federal

Rule of Civil Procedure 12(b)(6).[1]  The Court will grant the motion in part, and deny the motion in part.

I.   Facts Alleged in the Complaint

Irene Najmola was employed by the Chester County OB/GYN Associates and/or Chester County OB/GYN Services, beginning on October 4, 2004, as a medical assistant in their West Chester office.  Najmola took Short Term Disability leave, which was part of an employee benefit plan, beginning on August 1, 2012.[2]  While she was on leave, Najmola offered to perform light duties for her employer.  These offers were declined by the employer.  In September 2012, Najmola advised her employer that she was being released by her doctor to return to full-time employment on October 1, 2012.  Id. ¶¶ 25-26, 37.

On or about September 26, 2012, Najmola received a letter from Dr. Alan M. Askinas with the heading "Women's

---

[1] The defendants Women's Healthcare Group of Pennsylvania d/b/a Chester County OB/GYN Division, Women's Healthcare Group of Pennsylvania, LLC (collectively, "WHG"), and Chester County OB/GYN Associates have answered the complaint.  The plaintiff's claims against them will therefore move forward.

[2] The amended complaint states that Najmola's short term disability leave began on August 1, 2013 and was scheduled to end on October 1, 2012.  The plaintiff's opposition to the motion to dismiss states that Najmola's leave began on August 1, 2012.  The Court assumes that the amended complaint contains a typo, and the plaintiff's leave began on August 1, 2012.

Healthcare Group of PA Chester County OB/GYN Division."[3]  The letter stated:

> Upon review of our needs as we move to Women's Health Care Group of PA on October 1st, 2012, we do not have a position to offer you at this time.  If a position opens up in the future you are welcome to apply.  We wish you success in your future endeavors.

Id. ¶ 20-23, Exh. G.  Before her termination, Najmola had received favorable job performance evaluations.  The September 26, 2012 letter from Dr. Askinas was the only notice received by Najmola regarding the termination of her employment.  Id. ¶ 21, 27.

At the time her employment was terminated, Najmola was sixty-two years old.  During Najmola's employment, younger employees were treated differently than older employees.  For example, younger employees were assigned to work with one doctor and older employees were assigned to work with more than one doctor.  Younger employees were removed from hostile work environments and older employees were not.  The employer changed its policy of furloughing the last hired employee when reductions in force were necessary and older employees were laid

---

[3] On the date of the letter, Dr. Askinas was employed by Chester County OB/GYN Services d/b/a Chester County OB/GYN Associates.  A Fictitious Name Amendment was filed with the Pennsylvania Department of State Corporation Bureau on September 28, 2012 which added Women's Health Care Group of Pennsylvania, LLC to the registration for Chester County OB/GYN Associates, and removed Chester County OB/GYN Services from the registration.  Compl. ¶¶ 19, 22, Exh. G.

3

off.  Younger employees hired after Najmola were not disciplined or terminated when they violated rules or procedures.  Younger employees were trained in new and special procedures and older employees were not.  Najmola was also replaced by a substantially younger employee.  Id. ¶ 33-34.

Najmola received communications related to her employment bearing the headings of various entities.  On October 8, 2004, for example, Najmola signed a Confidentiality Agreement which indicated that Najmola was employed by "Chester County OB/GYN Services."  On or about December 29, 2009, Najmola received notice of a salary increase from "Chester County OB/GYN Associates," which also indicated that it was affiliated with "The Health Network of the Chester County Hospital."  On or about March 25, 2011, Najmola received a notice of a salary increase from The Chester County Hospital and Health System, which also included the logo for Chester County OB/GYN Associates.  In addition to the letter sent by Dr. Askinas bearing the Women's Healthcare Group of PA heading, Najmola also received her personnel file, postmarked on December 20, 2012, from Women's Healthcare Group of PA.  Id. ¶ 12-14, 17-18, 20, 24 Exh. B, D, E.

II.  Standard of Review

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded facts and reasonable inferences as true and construe the amended complaint in the light most favorable to the plaintiff.  Fowler v. UPMC Shadyside, 578 F.3d 203, 201 (3d Cir. 2009).  Legal conclusions and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not withstand a motion to dismiss.  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Disregarding any legal conclusions, the court should determine whether the facts alleged are sufficient to show that the plaintiff has a "plausible claim for relief."  Id.

III. Analysis

   A.   Age Discrimination Claims

The plaintiff alleges an age discrimination claim against the Chester County Defendants.  The amended complaint does not specify whether the plaintiff brings an ADEA claim or a PHRA claim.  A plaintiff alleging an age discrimination claim under either the ADEA or PHRA must exhaust administrative remedies prior to bringing suit.  See 29 U.S.C. § 626(d); Glickstein v. Neshaminy School Dist., No. 96-6236, 1997 WL 660636, at *10 (E.D. Pa. Oct. 22, 1997).  The plaintiff filed a charge of discrimination with the PHRC and EEOC on December 13,

5

2012.  See Pl.'s Opp'n Exh. A.[1]  However, the charge only named Women's Healthcare Group of PA ("WHG") in the caption.  Id. Ordinarily, an ADEA or PHRA claim can only be brought against a party previously named in an administrative complaint.  See Hildebrand v. Allegheny Cnty., No. 13-1321, -- F.3d --, 2014 WL 2898527, at *12 (3d Cir. Jun. 27, 2014).  The Chester County Defendants argue that the ADEA and PHRA claims against them must be dismissed because they were not named in the plaintiff's charge filed with the EEOC and PHRC.

Although not named as a respondent in the plaintiff's administrative charge, Chester County Obstetrics and Gynecology was identified in the body of the administrative charge, under the "particulars" section, as the former identity of WHG. Several courts have allowed plaintiffs to bring suit against a defendant who was not named in the caption of the administrative charge if the plaintiff named the defendant in the body of the administrative charge.  See, e.g., Glickstein, 1997 WL 660636, at *10 (citing Kinally v. Bell of Pennsylvania, 748 F. Supp.

---

[1] The plaintiff did not plead administrative exhaustion or attach an administrative charge to complaint.  The plaintiff has attached the administrative charge to her opposition to the motion to dismiss, however.  Because this document is a matter of public record and central to the plaintiff's claim, the Court will consider the administrative charge without converting the motion to dismiss to a motion for summary judgment.  See, e.g., Burkhart v. Knepper, 310 F. Supp. 2d 734, 741-42 (W.D. Pa. 2004).

1136, 1140 (E.D. Pa. 1990) and Dreisbach v. Cummins Diesel Engine, Inc., 848 F. Supp. 593, 596-97 (E.D. Pa. 1994)). See also McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 398-99 (E.D. Pa. 2002); Diep v. Southwark Metal Mfg. Co., No. 00-6136, 2001 WL 283146, at *3 (E.D. Pa Mar. 19, 2001); Timmons v. Lutheran Children and Family Serv. of E. Pa., No. 93-4201, 1993 WL 533399, at *3-4 (E.D. Pa. Dec. 17, 1993).  These cases reason that, by naming the defendant in the body of the charge, the defendant could have been on notice of a discrimination claim against it.

The Court is persuaded that because CCOGS was named in the body of the administrative charge, it is reasonable to infer that CCOGS was put on notice of the plaintiff's administrative claim.  The Court is not convinced by the defendants' argument that this reasoning does not apply to this case because the cases cited by the plaintiff involve only PHRA claims which name individuals, rather than entities, in the body of the charge. Although most of the above cited cases involve exhaustion of PHRA claims, the exhaustion requirements for PHRA claims are analogous to those of ADEA and Title VII claims, and courts have applied the same reasoning to ADEA and Title VII claims.  See, e.g., Pina v. Henkel Corp., No. 07-4048, 2008 WL 819901, *8-9 (E.D. Pa. Mar. 26, 2008); Kunwar v. Simco, 135 F. Supp. 2d 649, 651 (E.D. Pa. 2001).  Additionally, the Court finds that naming

7

an entity, such as CCOGS, in the body of an administrative complaint can be sufficient to put the entity on notice of the claims, just as naming an individual would put him or her on notice.

The Chester County Hospital was not named anywhere in the plaintiff's EEOC charge. "However, a plaintiff may proceed against a party not named in the administrative complaint 'when the unnamed party received notice and when there is a shared commonality of interest with the named party.'" McInerney, 244 F. Supp. 2d at 399 (quoting Schafer v. Board of Public Educ., 903 F.2d 243, 252 (3d Cir. 1990). In determining whether there is a commonality of interests, courts consider:

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named (party) are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980), vacated sub nom. on other grounds Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C Murphy Co., 451 U.S. 935 (1981).

There is no indication in the amended complaint that The Chester County Hospital received notice of the administrative proceedings. The plaintiff also has not demonstrated that CCOGS and The Chester County Hospital share a commonality of interests. The allegations that the two entities were "affiliated" and shared the same address, and that the plaintiff received a letter regarding her salary which contained logos for both entities, do not convince the Court that CCOGS would have represented the interests of The Chester County Hospital in the administrative proceedings and that The Chester County Hospital's presence was unnecessary.

The plaintiff argues that, if the Court finds that her claims were not exhausted, the doctrine of equitable tolling should apply and she should be permitted to file a charge. Generally, equitable tolling is permitted "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994) (citing School District of City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981)). As to the first basis for equitable tolling, the Third Circuit has stated "that where a

9

defendant actively misleads the plaintiff regarding the reason for the plaintiff's dismissal, the statute of limitations will not begin to run, that is, will be tolled, until the facts which would support the plaintiff's cause of action are apparent, or should be apparent to a person with a reasonably prudent regard for his or her rights." Id. at 1389.

The plaintiff argues that she is entitled to equitable tolling because the plaintiff's employer operated under several different business names, and she was not notified that there was any problem with the correct naming of her employer in the EEOC complaint. The Court is not convinced that equitable tolling should be applied to allow the plaintiff to file a new administrative charge. First, the plaintiff does not allege that she did not discover the true reason for her termination until sometime after her dismissal, as is typical of a claim for equitable tolling where the defendant has misled the plaintiff. The plaintiff has not demonstrated that equitable tolling applies in this context.

Second, assuming it does apply, although the plaintiff received communications from her employer with headings from The Chester County Hospital, CCOGS, and WHG at various times, it is apparent from the amended complaint that the plaintiff knew or should have known at the time of filing her EEOC charge that she had been employed by CCOGS and/or The Chester County Hospital.

10

The plaintiff has not sufficiently alleged that the defendants actively misled the plaintiff into believing that her claims should be pursued against WHG rather than CCOGS or The Chester County Hospital. For these reasons, the plaintiff's ADEA and PHRA claims against The Chester County Hospital are dismissed without prejudice.

  B. ERISA Claim

    "Section 510 of ERISA prohibits 'employers from discharging or harassing their employees in order to keep them from obtaining [employee] benefits.'" DiFrederico v. Rolm Co., 201 F.3d 200, 204 (3d Cir. 2000) (quoting DeWitt v. Penn-Del Directory Corp., 106 F.3d 514, 522 (3d Cir. 1997) (alteration in original)). "In addition to protecting future benefits, § 510 supports a claim where an employee alleges that he [or she] was terminated in retaliation for the past exercise of protected rights." Pailleret v. Jersey Const., Inc., No. 09-1325, 2010 WL 143681, at *2 (D.N.J. Jan. 11, 2010) (citing Kowalski v. L & F Prods., 82 F.3d 1283, 1287-88 (3d Cir. 1996).

    There is a split in the case law in the Third Circuit regarding the requirements for stating a claim for retaliation under § 510 of ERISA. Both the plaintiff and the Chester County defendants assert that in order to state a claim for ERISA retaliation, the plaintiff must allege that (1) she participated

11

in a protected activity, (2) she was subject to an adverse employment action, and (3) there is a causal connection between the participation in the protected activity and the adverse employment action.  These elements, borrowed from Title VII retaliation claims, have been applied by some courts in this circuit in § 510 retaliation claims.  See, e.g., Smith v. W. Manheim Twp., No. 11-778, 2011 WL 5117618, at *4 (M.D. Pa. Oct. 25, 2011).  See also Kalksma v. Konica Minolta Business Solutions U.S.A., Inc., No. 10-2829, 2011 WL 3703471, at *8 (D.N.J. Aug. 22, 2011) (requiring the plaintiff to show that (1) she is a member of an ERISA plan, (2) she was qualified for the position, and (2) she was retaliated against under circumstances that provide some basis for believing that her employer intended to deprive her of benefits).

        Most courts considering § 510 retaliation claims have required plaintiffs to allege "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the plaintiff may become entitled." See Garson v. HVAC Corp., Inc.,  No. 10-162, 2010 WL 4484634, at *3 (E.D. Pa. Nov. 8, 2010); Pailleret, 2010 WL 143681, at *2-3; Jackson v. Rohm & Haas Co., No. 06-3682, 2007 WL 2668001, at *9 (E.D. Pa. Sep. 5, 2007); Grosso v. Fed. Express Corp., 467 F. Supp. 2d 449, 465 (E.D. Pa. 2006).

The Third Circuit has not expressly articulated which elements must be alleged in order to plead a § 510 claim in the retaliation context. The Third Circuit has applied two different tests for establishing a prima facie case under § 510. Compare Berger v. Edgewater Steel Co., 911 F.2d 911, 922 (3d Cir. 1990) ("To establish a prima facie case under § 510, an employee must show: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled."), cert denied 499 U.S. 920 (1991), and Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 522 (3d Cir. 1997) (same), with Turner v. Schering-Plough Corp., 901 F.2d 335, 347 (3d Cir. 1990) ("All that the plaintiff must show [in order to establish a prima facie case under § 510] is that he (1) belongs to the protected class, (2) was qualified for the position involved, and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent was present."), and Kapetanovich v. Rockwell Int'l, Inc., No. 92-3018, 1994 WL 530912, at *2 (3d Cir. Jul. 15, 1992) (same).

Under either approach, the "plaintiff must demonstrate that the defendant had the 'specific intent' to violate § 510." DeFrederico, 201 F.3d at 204-05. See also Turner, 901 F.2d at 347. "This requires the plaintiff to show that 'the employer made a conscious decision to interfere with the employee's

13

attainment of pension eligibility or additional benefits.'"  Id. at 205 (quoting DeWitt, 106 F.3d at 522).  "[A]t the motion to dismiss stage, '[i]t is sufficient to plead facts that, when taken as true, constitute circumstantial evidence of the employer's specific intent to interfere with the ERISA plan.'" Woerner v. FRAM Group Operations, LLC, No. 12-6648, 2013 WL 1815518, at *5 (D.N.J. Apr. 29, 2013) (quoting Stabile v. Allegheny Ludlum, LLC, No. 12-168, 2012 WL 3877611 (W.D. Pa. Sep. 6, 2012)).

The Court need not decide, at this point, which of the requirements applied by the Third Circuit are correct in the context of a retaliation claim.  Under either approach, the plaintiff has stated a claim.  The plaintiff has alleged the first and second requirements under the Turner framework, as she alleges that she utilized her ERISA protected short-term disability plan and that she worked as a medical assistant for several years, received favorable reviews, and was cleared by her doctor to return to work full-time.

She also alleges that she was terminated shortly after she informed her employer that she was able to return to work. The plaintiff's employment ended on the exact date that she was being released by her doctor to return to work.  She also alleges that she received favorable performance evaluations up until her termination.  The Court finds that these facts are

sufficient at this stage to infer a causal connection and that the defendants had the intent to interfere with or retaliate against the plaintiff for utilizing ERISA protected benefits. See, e.g., Pailleret, 2010 WL 143681, at *2 (finding the plaintiff alleged a prima facie case where termination occurred shortly after utilizing ERISA benefits); Kowalski v. L & F Products, No. 94-448, 1995 WL 16783, at *3 (D.N.J. Jan. 11, 1995) ("Plaintiff's discharge days after utilizing the plan benefits gives rise to an inference that her termination was retaliatory."), vacated on other grounds, 92 F.3d 1283 (3d Cir. 1996); Narodetsky v. Cardone Indus., Inc., No. 09-4734, 2010 WL 678288, at *5-6 (E.D. Pa. Feb. 24, 2010) (finding that plaintiff alleged a prima facie case of retaliation under § 510 where defendants terminated the plaintiff's employment shortly after he requested short term disability leave). This is sufficient to state a claim under the requirements articulated in Turner.

The plaintiff also states a claim under the Berger requirements. The plaintiff alleges that she was terminated from her position, which is prohibited conducted under § 510.[4]

---

[4] The defendants argue that the plaintiff has not alleged that she was terminated from her employment with CCOGS and The Chester County Hospital. Instead, the defendants argue that the plaintiff was not hired by WHG. The Court finds that the plaintiff has sufficiently pleaded that the CCOGS and The Chester County Hospital discontinued the plaintiff's employment, which is sufficient to satisfy the first element of a prima facie case under § 510.

See McLendon v. Cont'l Can Co., 908 F.2d 1171, 1177 n.11 (3d Cir. 1990) ("'Prohibited conduct' includes any attempt to 'discharge, fine, suspend, expel, discipline, or discriminate' . . . ."). The plaintiff also alleges that she utilized her short term disability benefit, which was part of an Employer Benefit Plan, and that the temporal proximity between the exercise of her short-term disability leave and her termination are suggestive of the prohibited intent. The defendants' motion as to the plaintiff's ERISA claim is therefore denied.

    C.    FMLA Claim

The plaintiff does not specify in her amended complaint whether her FMLA claim is based on retaliation or interference. The amended complaint alleges only that: (1) "Plaintiff was entitled to leave of twelve (12) weeks and the right to return to work thereafter;" (2) "Plaintiff qualified for FMLA leave;" (3) "Employer failed to advise Plaintiff of her rights under the FMLA;" and (4) "Employer terminated Plaintiff's employment for exercising her rights under FMLA." Compl. ¶¶ 41-44.

In order to state a claim for FMLA interference, a plaintiff must allege that (1) she was an eligible employee under the FMLA; (2) the defendant was an employer covered by the FMLA; (3) the plaintiff was entitled to FMLA leave; (4) the

16

plaintiff gave notice to the employer of her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which she was entitled under the FMLA. See, e.g., Atchison v. Sears, 666 F. Supp. 2d 477, 488 (E.D. Pa. 2009). To state a claim for FMLA retaliation, the plaintiff must allege that: (1) she invoked her right to FMLA benefits; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to her exercise of her FMLA rights. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004); Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508-09 (3d Cir. 2009).

The plaintiff has not sufficiently alleged either type of FMLA claim. The amended complaint alleges no facts which would support the plaintiff's conclusory allegations that she was qualified for and entitled to FMLA leave, or that she exercised her rights under the FMLA.[5] It also does not allege any facts to support the conclusory allegation that the plaintiff's employer failed to advise her of her FMLA rights. The plaintiff has therefore failed to state a claim for either FMLA interference or retaliation, and her FMLA claims are dismissed without prejudice.

---

[5] Although the plaintiff alleges that she took short term disability leave from August 2012 through September 2012, the amended complaint makes no mention of whether this period of leave was covered by the FMLA, or whether she exercised that right pursuant to the FMLA's requirements. See Compl. ¶ 25.

D.  Fraudulent Misrepresentation

To state a claim for fraudulent misrepresentation, the complaint must allege "'(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result.'" Petruska v. Gannon Univ., 462 F.3d 294, 310 (3d Cir. 2006) (quoting Martin v. Lancaster Battery Co., 606 A.2d 444, 448 (Pa. 1994)). Pursuant to Fed. R. Civ. P. 9(b), the plaintiff must "plead the circumstances of the alleged fraud with particularity to ensure that [the] defendant is placed on notice of the 'precise misconduct with which [it] is charged, and to safeguard [the] defendant against spurious charges of fraud.'" Benevento v. LifeUSA Holding, Inc., 181 F.R.D. 298, 300-01 (E.D. Pa. 1998) (quoting Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989)).

The amended complaint contains no allegations with respect to fraudulent misrepresentation by The Chester County Hospital. To the extent the plaintiff alleges a fraudulent misrepresentation claim against The Chester County Hospital, that claim is dismissed without prejudice.

With respect to CCOGS, the amended complaint alleges that CCOGS falsely represented itself as Women's Healthcare

18

Group of Pennsylvania through the letter to the plaintiff of September 24, 2012, signed by Dr. Askinas who was an employee of CCOGS at the time. Compl. ¶¶ 20-23, 48. The plaintiff relied on that letter when she filed her EEOC/PHRC complaint against WHG. Id. ¶ 50-51. The amended complaint contains no allegations regarding intent or damages to the plaintiff, however. The plaintiff's fraudulent misrepresentation claim against CCOGS is therefore dismissed without prejudice.

    E.    Compensatory and Punitive Damages

The plaintiff seeks, among other remedies, compensatory and punitive damages. Punitive damages are not available under the ADEA, PHRA, ERISA or FMLA. See McGehean v. AF & L Ins. Co., No. 09-1792, 2009 WL 1911618, *2 (E.D. Pa. Jun. 30, 2009) (ADEA); Hoy v. Angelone, 720 A.2d 745, 751 (Pa. 1998) (PHRA); DiFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 458 (3d Cir. 2003) (ERISA); Brown v. Nutrition Management Servs. Co., 370 F. App'x 267, 270 n.3 (3d Cir. Mar. 17, 2010) (FMLA). Compensatory damages for pain and suffering are also not available under the ADEA, ERISA or FMLA. See id. In her opposition to the motion to dismiss, the plaintiff clarifies that she "makes no requests for compensatory damages for pain, suffering, inconvenience, mental anguish, humiliation and non-pecuniary losses or for punitive damages as distinct from

liquidated damages under the ADEA." Pl.'s Opp'n 26. The plaintiff also withdraws her request for punitive damages under the PHRA, FMLA, and ERISA. Id. She also withdraws her request for non-economic compensatory damages under the FMLA and ERISA. Id. The Court will therefore dismiss the plaintiff's claims for punitive and compensatory damages with prejudice.

     An appropriate order shall issue separately.